UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETHLEHEM CONSTRUCTION, INC., Washington corporation,<br><br>           Plaintiff,<br><br>    v.<br><br>TRANSPORTATION INSURANCE COMPANY, a foreign corporation; and ST. PAUL REINSURANCE COMPANY, LIMITED, a foreign corporation,<br><br>           Defendants. | NO. CV-03-0324-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART TRANSPORTATION'S SUPPLEMENTARY PAYMENTS MOTION** |

    Before the Court, without oral argument, is Transportation Insurance Company's ("Transportation's") Motion for Partial Summary Judgment on "Supplementary Payments" Provision Issue ("Supplementary Payments Motion") (Ct. Rec. 117). After reviewing the submitted materials and relevant authority, the Court is fully informed and hereby grants in part and denies in part Transportation's motion.

///
///
///
///
///

ORDER ~ 1

# I. Background[1]

## A. The Transportation Policies

In 1999 and 2000, Bethlehem purchased insurance policies underwritten by Transportation that covered risks associated with construction projects involving Bethlehem. Under the "Coverage A Bodily Injury and Property Damage Liability Sections" of Transportation Commercial General Liability Insurance Policy Nos. C1082227545 (12/31/1999-12/31/2000) and C1082227545 (12/21/2000-12/31/2001) ("Transportation Policies"),[2] Transportation and Bethlehem agreed Transportation would "pay those sums that [Bethlehem] becomes legally obligated to pay as damages because of . . . 'property damage' to which" the Transportation Policies applied. (Ct. Rec. 190 Ex. 1 at 2 & Ex. 2 at 2.) The policies also stated Transportation had "the right and duty to defend the insured against any 'suit' seeking those damages." *Id.* That same section contains the following language: "No other obligation of liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B." *Id.*

Also included in the Transportation Policies was the following "Supplementary Payments Clause":

---

[1] In ruling on a motion for summary judgment, the Court considers the facts and all reasonable inferences therefrom as contained in the submitted affidavits, declarations, exhibits, and depositions, in the light most favorable to the party opposing the motion. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1972) (*per curiam*). The following factual recitation was created with this standard in mind.

[2] Aside from the policy periods, the terms and conditions set forth in the two Transportation Policies appear to be identical.

ORDER ~ 2

> <u>We</u> will pay, with respect to any claim we investigate or settle, or any "suit" against an insured <u>we defend</u>: . . . All reasonable expenses incurred by the insured <u>at our request</u> to assist <u>us</u> in the investigation and defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work. These payments will not reduce the limits of insurance.

*Id.* Ex. 1 at 6 & Ex. 2 at 6 (emphasis added).

In the second preliminary paragraphs of these policies, this language appears: "The words 'we', 'us' and 'our' refer to the company providing this insurance." (Ct. Rec. 190, Ex. 1 at 2 and Ex. 2 at 2).

**B. Steveco's Claims & Supplementary Payments Clause Communications**

In early 2000, Bethlehem entered into a construction contract with Steveco, Inc. ("Steveco") to design and build a cold storage facility in Bakersfield, California ("storage facility"). (Ct. Rec. 174 Ex. 18 at 1.) The storage facility was to be used by Lucich Farms Cold Storage, LLC ("Lucich Farms") for the storage of table grapes. *Id.* The storage facility was constructed in two phases ("Phase I and Phase II"). *Id.* Phase I commenced in early 2000 and ended on August 22, 2000, when the portion of the storage facility constructed during Phase I was opened for operation. *Id.* Phase II was completed in the fall of 2001. *Id.* at 2.

On July 23, 2001, during Phase II of the project, a layer of white powder was discovered on 23,362 boxes of grapes being stored in a pre-cooling room constructed during Phase I. (Ct. Rec. 174 Ex. 1 at 1.) Prior to the discovery of the powder, the grapes had a wholesale market value of $350,337.00. *Id.* Ex. 1 at 2. The powder had a "paint-like feel and appearance, and since Bethlehem's painters had been present and working at the site for several days, grape shipments were halted and Bethlehem was contacted." *Id. Ex. 1 at 1.* On August 23, 2001, thirty

ORDER ~ 3

days after the mysterious white powder was discovered on the grapes, Associated Laboratories, a laboratory retained by Transportation to determine the source of the white powder, issued a report stating the grapes "were found to be fit for human consumption if properly and completely rinsed." *Id*. Ex. 1 at 2.  However, by that time, the grapes had aged considerably, and their condition was too poor for normal sale and only $15,700.00 was received through a salvage sale. *Id.*  The final grape-related loss totaled $334,637.00.

In a letter dated October 5, 2001, Steveco provided Bethlehem with formal notice of certain Phase I construction defects Steveco had become aware of with the storage facility and requested their repair. *Id.* Ex. 1 at 3-4.  These defects included:

> (a) the concrete support beams for the refrigeration unit that have corrosion problems; (b) rusting black iron supports of the sprinkler system; (c) painting of rooms 3, 4, 7, 8 and the precooler; and (d) caulking of bunkers, specifically for leaks from room 5 to 7, and various leaks and open areas in the precooler.

*Id.*

On January 30, 2002, presumably because Steveco's grape and construction defect claims were not promptly resolved, Steveco filed a complaint against Bethlehem in the Kern County Superior Court of California. (Ct. Rec. 174 Ex. 5 at 4-17.)  In its complaint, Steveco alleged Bethlehem, in addition to the other defendants, was liable for breach of contract and negligence, which resulted in its grape loss and various construction defects. *Id.* On February 19, 2002, Bethlehem faxed a copy of Steveco's complaint its insurance broker, requesting it be transmitted to Transportation. *Id.* Ex. 5 at 2.

ORDER ~ 4

Steveco filed an amended complaint against Bethlehem on April 26, 2002. (Ct. Rec. 174 Ex. 10.)  This document and the accompanying summons were forwarded to Transportation by Bethlehem on May 17, 2002, with a letter stating: "Defense efforts will now proceed in earnest.  Please advise immediately if you intend to voluntarily help fund the defense." *Id.* at Ex. 11.  On July 22, 2002, Transportation, through a letter written by claims specialist Sandy Marcy to Bethlehem, acknowledged its receipt of Steveco's complaint and confirmed that Transportation would be appointing defense counsel to defend Bethlehem in the underlying Steveco action. (Ct. Rec. 143 Ex. A.)  Specifically, the letter stated:

> We have retained the law firm of Booth, Mitchel & Strange to represent Bethlehem Construction, Inc. in [the Steveco] case. . . . Dan Crowley has been assigned to [the Steveco] case and will be in contact with you and Mr. McCormick in the immediate future.
>
> We ask that you cooperate fully with any requests we make of you in the course of our handling of this matter, as well as those of counsel.

*Id.*

In an August 30, 2002, letter to Mr. Crowley, Mr. McCormick, on Bethlehem's behalf, wrote the following:

> As I mentioned to you during our [August 26, 2002,] conversation, I wanted to make explicit that which I believe is implicit in the handling of matters of this type. Bethlehem owes to [Transportation] the duty of cooperation, and Bethlehem has directed me to provide whatever assistance [Transportation] might reasonably require in order to provide a full and complete defense.
>
> At the same time, Bethlehem's insurance policy contemplates Bethlehem will be reimbursed for its costs and expenses that it incurs at the request of [Transportation]. By this letter, I want to simply memorialize the fact that Bethlehem will treat any communication from you, or request for assistance from you, as if it was a request made by [Transportation] as contemplated in the supplemental payments portion of Bethlehem's insurance policy.

> I would appreciate it if you would simply confirm with [Transportation] its willingness to honor this understanding. If such is not the case, if [Transportation] does not stand behind you, and if [Transportation] expects Bethlehem to bear the cost of either having its employees work in the service of your effort to prepare a defense, I trust [Transportation] or you will so advice me in writing. Bethlehem would, of course, take exception to such a stance by [Transportation].

*Id.* Ex. C.

The August 30, 2002, letter indicates Transportation, via Ms. Marcy, was sent a courtesy copy. *Id.* In addition, the August 30, 2002, letter was also attached to a letter written to Ms. Marcy by Mr. Crowley on September 13, 2002. *Id.* Ex. E. In his September 13, 2002, letter, Mr. Crowley explained that he thought

> it would be best if [Transportation] could retain its own coverage counsel to represent its interests in [the Steveco] matter as soon as possible. Mr. McCormick keeps directing inquiries to me regarding "[Transportation's] position" on various topics, and I sense that he is growing weary of my response that I cannot address those.

*Id.*

**C. The Settlement Agreement**

In late 2002 and early 2003, Bethlehem, Bethlehem's insurance carriers, and Steveco engaged in mediation discussions that ultimately resulted in a February 24, 2003, global settlement of Steveco's claims ("Settlement Agreement"). (Ct. Rec. 174 Ex. 18.) Under the global settlement agreement, Steveco was to be paid $340,000.00 by Transportation and $190,000.00 by other interested parties to satisfy the grape and construction defect claims. Once these amounts were paid, Steveco agreed to dismiss its claims against Bethlehem. *Id.* at 4-5.

ORDER ~ 6

**D. Bethlehem's Supplementary Payments Claim**

On March 4, 2003, Bethlehem filed this suit against Transportation, alleging the insurance carrier breached the Transportation Policies, in part, by failing to reimburse Bethlehem for certain expenses Transportation was responsible for, presumably under the Supplementary Payment Clause. (Ct. Rec. 1 at 13.)  In a spreadsheet attached to its damage expert Sean Black's Federal Rule of Civil Procedure 26(a)(2)(B) report, Bethlehem sets forth the following amounts it believes it is entitled to recover from Transportation under the Transportation Policies' Supplementary Payments Clause:

| Expense Category | Amount |
|---|---|
| Manpower | $132,917.75 |
| Meals | $ 4,612.44 |
| Hotel Charges | $ 9,506.25 |
| Car Rentals & Fuel | $ 4,989.27 |
| Commercial Airfare | $ 2,950.83 |
| Charter Airfare | $ 7,710.62 |
| Citation Jet Lease | $140,664.00 |
| Overhead | $ 59,710.51 |
| **TOTAL** | ***$363,061.67*** |

(Ct. Rec. 120-6 at 7.)  The amounts cover expenses allegedly incurred by Bethlehem between July 2001 and August 2004. *Id.*

**E. Transportation's Claims Handlers**

Claims specialist Bobbie Jennings exclusively handled Bethlehem's grape loss claim for Transportation from July 25, 2001, the date the grape loss claim was first reported to Transportation, to June 4, 2002. (Ct. Rec. 121 ¶ 8.)  Ms. Marcy exclusively handled Bethlehem's

ORDER ~ 7

construction defect claim for Transportation from March 2002, when the construction defect claim was tendered to Transportation, to June 4, 2002. (Ct. Rec. 123 ¶¶ 3 & 5.)  On June 4, 2002, the grape loss and construction defect claims were combined and assigned for handling by Transportation to Ms. Marcy. *Id.* ¶ 5.  Ms. Marcy exclusively handled the combined claim under December 30, 2002, when the combined claim was reassigned to claims handler Seth Mootchnik. (Ct. Rec. 122 ¶ 3.)  Mr. Mootchnik handled the combined claim until the underlying Steveco action was resolved by the parties' February 2003 Settlement Agreement. *Id.* ¶ 5.

Ms. Jennings, Ms. Marcy, and Mr. Mootchnik each assert they never requested Bethlehem, with few minor exceptions,[3] to incur any expenses, including those listed in Mr. Black's spreadsheet, to assist Transportation in its investigation of the Steveco claims. (Ct. Recs. 121 ¶¶ 8 & 10, 122 ¶ 10, and 123 ¶ 10.)  Similarly, Ms. Marcy and Mr. Mootchnik both claim they never provided "anyone at Booth, Mitchel & Strange blanket authority to request that Bethlehem incur expenses to assist Transportation in the defense of the Steveco v. Bethlehem lawsuit." (Ct. Recs. 122 ¶ 6 and 123 ¶ 9.)

---

[3] Mr. Mootchnik admits to agreeing to reimburse Bethlehem $268.00 for the cost of renting a "man lift" and for time spent by a Bethlehem employee to participate in a site inspection. (Ct. Rec. 122 ¶ 9.) Similarly, Ms. Marcy admits to agreeing to reimburse Bethlehem for costs associated with copying documents requested by defense counsel at Booth, Mitchel & Strange. (Ct. Rec. 123 ¶ 7.)

ORDER ~ 8

## II. Standard of Review

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id.* at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id.* at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986).  Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III. Analysis

Despite the use of "we" in the clause "we have the right and duty to defend" in these policies, and the policies' explanation of "we", "us" and "our" as referring to Transportation, Transportation carried out its duty in part by assigning the defense of the lawsuit to the California law firm of Booth, Mitchell and Strange (hereafter "Booth law firm"). There is no dispute that the assignment of counsel was a policy right and duty of Transportation. That assignment did not waive Transportation's continuing right to control the litigation as long as it did not interfere with the attorney's defense of the insured. While some insurance companies have litigation departments that represent insureds, here Transportation hired a private law firm to provide the defense of Bethlehem in the underlying litigation with Lucich Farms Cold Storage, LLC and Steveco, INC, hereafter "Steveco". When it made that assignment to the Booth law firm, it reminded Bethlehem of its obligation to cooperate with both that law firm as well as Transportation in its letter of July 22, 2002.  And Transportation, with the undisputed right to control this litigation, could continue to make requests of Bethlehem until the date the case concluded by a global settlement, February 25,

2003 (Ct. Rec. 174, Ex. 18), and had a right to expect Bethlehem to cooperate as required by the terms of the polices.

In a breach of contract claim brought by an insured against its insurer, the insured carries the burden of bringing itself "within the provisions of the policy under consideration." *Greene v. St. Paul-Mercury Indemn. Co.*, 51 Wash. 2d 569, 574 (1958). For this reason, to prevail on its claim Transportation breached the Transportation Policies by failing to reimburse expenses owed to it under the policies' Supplementary Payments Clauses, Bethlehem must prove it incurred expenses covered by the Supplementary Payments Clauses; that is, that it actually incurred reasonable expenses at the request of Transportation. If it is unable to do so, Transportation will not be liable under the Supplementary Payments provision. *Schwindt v. Underwriters at Lloyd's of London*, 81 Wash. App. 293, 298 (1996).

Both Transportation Policies state:

> <u>We</u> will pay, with respect to any claim we investigate or settle, or any "suit" against an insured <u>we defend</u>: . . . All reasonable expenses incurred by the insured <u>at our request</u> to assist <u>us</u> in the investigation and defense of the claim or "suit," including actual loss of earnings up to $250 a day because of time off from work.

(Ct. Rec. 190 Ex. 1 at 6 & Ex. 2 at 6 (emphasis added))

The Court has found little case law interpreting and applying the language used in the Supplementary Payments provision of these Transportation policies. Nor has the Court found any precedent correlating that provision with Transportation's right and duty to defend and its right to control the litigation, both directly and through its assignment of a private law firm to defend Bethlehem. There is, however, no dispute that none of the expenses claimed by Bethlehem were incurred

ORDER ~ 11

at the direct request of Transportation's claims handlers. The Transportation employees assigned to this file have declared that they made no such request and Bethlehem has not rebutted those declarations. The Court rules that to that extent, Bethlehem has failed to carry it *Celotex* burden of coming forward with evidence which creates a genuine issue of material fact and partially grants Transportation partial summary judgment on that issue - it never directly requested Bethlehem to incur any expense other than a couple of minor expenses as earlier documented.[4]  This ruling does not end the Court's analysis of the issue of the Bethlehem claims for unreimbursed expenses of litigation under the Supplementary Payments provision.

What remains to be discussed are the various theories advanced by Bethlehem that any expenses incurred at the request of the Booth law firm are covered by the Supplementary Payments provision. The Court discusses them in turn.

**A.  Contract Ambiguity and Express Agency**

Bethlehem asserts that the Supplementary Payments provision is ambiguous either on its face or because Transportation's conduct created an ambiguity by assigning the Booth law firm to defend the Steveco litigation.  Bethlehem argues that the ambiguity or conduct obligates Transportation to pay expenses under that provision. It argues that the interpretive canon of *contra preferentum* applies.  There is no facial ambiguity in this policy provision. The provision applies if

---

[4] The court expresses no opinion on whether these expenses if not payable as Supplementary Payments are recoverable as damages in the "bad faith" cause of action.

ORDER ~ 12

Transportation has requested the insured to incur an expense and the insured has incurred an actual and reasonable expense with respect to any suit defended by the company. However, Transportation's letter of July 22, 2002, does state in pertinent part, "We ask that you cooperate fully with any requests we make of you in the course of our handling of this matter, as well as those of counsel."(Ct. Rec. 143, Ex. A.) It is this language that Bethlehem argues creates the ambiguity because the assigned counsel can now make requests of Bethlehem with which it is required to comply because of its contractual duty to cooperate or lose coverage. Indeed, the policies require the insured to cooperate as a condition of coverage:

> You and any other involved insured must . . . [c]ooperate with us in the investigation or settlement of the claim or defense against the suit . . .

(Ct. Rec. 190, Ex. 1 at 9, Ex. 2 at 9 "SECTION IV, CONDITIONS")

That arguably broadens the definition of "we", "us" and "our" to include both the company and assigned counsel.  It is noteworthy that Transportation did not refer in any way to the Supplemental Payment provision when it reminded Bethlehem of its duty to cooperate both with its requests and those of newly assigned counsel. It did, however, state: "Should you have any questions regarding this matter, please do not hesitate to contact the undersigned at the number listed above." (Ct. Rec. 143, Ex. A at 5)  And when counsel for Bethlehem asked that Transportation confirm his client's understanding that requests from the Booth law firm were to be treated as requests from Transportation permitting reimbursement of actual and reasonable expenses incurred in

ORDER ~ 13

responding to those requests, Transportation did not respond despite its invitation in the July 22, 2002, letter to ask such questions.

Bethlehem contends that the Court should find the language ambiguous, and that therefore a genuine issue of material fact exists as to expenses incurred at the request of counsel hired by Transportation (Ct. Rec. 144-2 at 10). Here, the Court does not find the terms "we" "us" and "our" to be ambiguous, but nevertheless finds the letters exchanged helpful to interpretation of that term in context.[5] Examining the policy as a whole, and the context afforded by subsequent letters between Transportation and Bethlehem, "we" "us" and "our," as used in the Supplementary Payments provision must mean those requests made by counsel provided by Transportation to defend the suit.

The policy defines "we" "us" and "our" to mean "the company," yet a company can only act through its agents. *See, e.g., Macuh v. Kissling*, 56 Wash. App. 312, 316 (1989)(citations omitted). The Supplementary Payments clause is in fact a corollary to the obligation of the insured to cooperate in the defense of a claim. As one commentator explains:

> The insured ordinarily does not have to satisfy the obligation to assist and to cooperate with the insurer at his or her own expense. The insured merely has to contribute time. A policy condition may also provide that the insurer shall reimburse the insured for any expense, other than loss of earnings, that is incurred at the insurer's request, although some policies

---

[5] The consideration of subsequent conduct of the parties, as reflected in the correspondence is permissible in construing the contract and does not require a finding of ambiguity. *See, e.g. Berg v. Hudesman*, 115 Wash. 2d 657, 667-68 (1990) (adopting "context rule," as set forth in the RESTATEMENT (SECOND) OF CONTRACTS §§ 212, 214(c)).

ORDER ~ 14

> contain a provision that serves as the basis for compensating the insured in a nominal amount for loss of earnings.

APPLEMAN ON INSURANCE 2D § 138.2. The Supplementary Payments clause in a CGL Policy provides for payment of such expenses incurred in cooperating with the defense. *See id.* § 131.5 (discussing materially similar CGL language). The grant of Supplementary Payments applies "with respect to any claim **we** investigate or settle, or any 'suit' against an insured **we** defend." (Ct. Rec. 190 Ex. 1 at 6. Ex. 2 at 6 (emphasis added).)

Prior to appointment of defense counsel, "the company" only included those agents investigating Bethlehem's claim. However, once Transportation selected the Booth firm to defend Bethlehem, it became clear that the "we" conducting the defense was not solely "the company" in an abstract sense, nor limited to employees of Transportation, but included the attorneys from the Booth firm, as well as any agents from the company that may have supervised the conduct of the defense by the Booth firm. If the Court were considering only those terms in the cooperation clause, certainly Transportation would not concede that "we" "us" and "our" only created an obligation for Bethlehem to cooperate with "the company," but not an obligation to cooperate with assigned defense counsel. Reading the policy as a whole, and given that the defense counsel was engaged and authorized to conduct the defense, and the Supplementary Payments are claimed by Bethlehem for its cooperation and assistance in that defense, expenses incurred by the insured pursuant to requests of defense counsel are expenses incurred "at **our** request" under the Supplementary Payments provision.

The Court concludes that the demand for cooperation with newly assigned counsel and the language of the policy created express authority

ORDER ~ 15

in the Booth law firm to make requests of Bethlehem just as if the requests came from Transportation itself. This conclusion is driven by the combined effect of the language of the pertinent policy provisions cited and quoted by the Court herein, harmonizing the insured's duty of cooperation and right to supplemental payment with the insurer's right to control the claim and litigation, the conduct of Transportation in assigning litigation counsel while demanding cooperation with that law firm's requests. Transportation likewise failed to mention the Supplemental Payment provision in its reservation of rights letter of July 22, 2002,[6] nor did Transportation clarify it when Transportation had the opportunity to do so at Bethlehem's request.

There are genuine issue of material fact as to whether the Booth law firm made requests of Bethlehem after July 22, 2002 and before February 23, 2003, what those were and finally, whether those expenses were actually incurred and were reasonable in amount. The language of the

---

[6] The Court makes no decision as to whether this outcome would be different if Transportation had included in its reservation of rights letter a claim for, or instruction on Transportation's position that it had to approve Supplementary Payments in advance of the costs being incurred by Bethlehem, in order for the costs to be recoverable. As such facts are not present in this case, the Court does not make any advisory opinion on other actions an insurer might take to try to designate or limit "Supplementary Payments" and who acts for the insurer as "we" "us" and "our" in that provision.

ORDER ~ 16

Supplemental Payment provision does require such proof before the expenses will be reimbursed. Those are now jury questions.

The Court holds that the issues of apparent agency, promissory estoppel or quasi-contract are not supported by the facts in this record.

Accordingly, **IT IS HEREBY ORDERED**: Transportation's Supplementary Payments Motion **(Ct. Rec. 117)** is **GRANTED IN PART** (those expenses incurred by Bethlehem (i) prior to July 22, 2002; (ii) after February 24, 2003; and (iii) not requested by Booth, Mitchel & Strange) and **DENIED IN PART** (those expenses incurred by Bethlehem between July 22, 2002, and February 24, 2003, that were allegedly requested by Booth, Mitchel & Strange).

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this ___28th___ day of February 2007.

                    S/ Edward F. Shea
                     EDWARD F. SHEA
              United States District Judge

Q:\Civil\2003\0324.MSJ.tic.supplementary.payments rev 2.27.wpd

ORDER ~ 17