UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BETHLEHEM CONSTRUCTION, INC., a Washington corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TRANSPORTATION INSURANCE COMPANY, a foreign corporation,<br><br>　　　　　Defendant. | NO. CV-03-0324-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART TRANSPORTATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON BETHLEHEM'S BAD FAITH AND WASHINGTON CONSUMER PROTECTION ACT CLAIMS** |

　　Before the Court is Transportation Insurance Company's ("Transportation's") Motion for Partial Summary Judgment to Dismiss Claims for Bad Faith and Washington Consumer Protection Act ("CPA") Liability Related to Coverage Positions (Ct. Rec. 169). After reviewing the submitted materials and listening to oral argument, the Court is fully informed and grants in part and denies in part Transportation's motion for the reasons below. Specifically, Transportation's motion is denied with respect to Transportation's refusal to reimburse BCI for defense-related costs under the Supplementary Payments Clause (as referenced in Court Record 555) of the insurance policy for the period between July 22, 2002, and February 23, 2003. Transportation's motion is granted with regard to all other claims.

ORDER ~ 1

## I. Background[1]

Bethlehem Construction, Inc. ("BCI") purchased insurance from Transportation among others to cover work it had contracted to complete in Bakersfield, California for Stevco. The project was divided into two phases. Phase I finished in August 2000, while Phase II was not complete until the fall of 2001. In July 2001, Stevco discovered a layer of white powder on grapes it was storing in a warehouse completed by BCI during Phase I. The powdered grapes led Stevco to examine the warehouse for defects that may have caused the powder to appear. In doing so, Stevco discovered that 15 of 128 Phase I concrete beams were spalling. Stevco later filed suit against BCI to recover damages for what it believed were defective Phase I beams as well as the loss of the value of the grapes.

In the Spring of 2002, Stevco contracted BCI to replace the concrete beams with stainless steel beams, which would not be adversely affected by the warehouse's fluctuating temperatures as the concrete beams had been. BCI entered into the contract after Stevco threatened to have a different contractor perform the work for a higher price. Approximately $51,000 of the contract price was paid by Stevco for the repairs, but the remaining $118,000 was withheld because BCI defectively installed the stainless steel beams.

On July 22, 2002, Transportation informed BCI that it would provide counsel to defend BCI against Stevco's grape and facility defects claims.

---

[1] The Court includes only an abbreviated summary of the background because the parties are familiar with the facts and the Court's prior Orders on summary judgment have included extensive discussion of the facts.

ORDER ~ 2

However, Transportation's defense was subject to a reservation of rights, under which Transportation could seek reimbursement for costs it incurred defending claims that were not covered by BCI's Transportation policies. Transportation hired the law firm of Booth Mitchel & Strange ("BMS") to defend BCI. BCI now claims that BMS's representation was inadequate, that BCI incurred numerous expenses as a result of its need to properly defend itself against Stevco, and that Transportation breached the insurance policies insuring BCI, acted in bad faith, and violated the CPA in a variety of ways.

In February 2003, Stevco, BCI, BCI's insurers, and other parties signed a global settlement under which Stevco was compensated for the allegedly defective beams and damage to grapes stored in the warehouse, and BCI was paid money due for construction work completed for Stevco. Thereafter, BCI filed suit against its insurers to recover damages related to the Stevco settlement and the representation provided by the insurers during the process.

## II. Summary Judgment Standard

Summary judgment will be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). When considering a motion for summary judgment, a court may not weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A genuine issue for

trial exists only if "the evidence is such that a reasonable jury could return a verdict" for the party opposing summary judgment. *Id*. at 248. In other words, issues of fact are not material and do not preclude summary judgment unless they "might affect the outcome of the suit under the governing law." *Id.* There is no genuine issue for trial if the evidence favoring the non-movant is "merely colorable" or "not significantly probative." *Id*. at 249.

If the party requesting summary judgment demonstrates the absence of a genuine material fact, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial" or judgment may be granted as a matter of law. *Anderson*, 477 U.S. at 248. This requires the party opposing summary judgment to present or identify in the record evidence sufficient to establish the existence of any challenged element that is essential to that party's case and for which that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Failure to contradict the moving party's facts with counter affidavits or other responsive materials may result in the entry of summary judgment if the party requesting summary judgment is otherwise entitled to judgment as a matter of law. *See Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### III. Conflict of Law

The parties raise no conflict of law issues in this motion and cite exclusively to Washington cases. Thus, the Court presumes there are no material differences between Washington and California law regarding the

relevant issues and applies Washington substantive law to these facts and issues.

**IV. Analysis**

A. Relief Sought in Transportation's Motion and Prior Rulings

Transportation's motion does not seek to eliminate all potential bad faith claims. Instead, Transportation asks the Court to dismiss three discrete claims of alleged bad faith and violations of the CPA for: (1) Transportation's decision to defend BCI subject to a reservation of rights; (2) Transportation's refusal to indemnify BCI for costs necessary to replace all 128 Phase I beams; and (3) Transportation's refusal to reimburse BCI for defense-related costs under the Transportation policy's Supplementary Payments Clause.

With respect to BCI's claim for indemnification for its costs to replace the Phase I beams, the second issue addressed in Transportation's motion, this matter was disposed of by a prior Order of this Court (Ct. Rec. 557). The Court ruled BCI failed to meet its *Celotex* burden of production of evidence showing that Transportation was responsible for indemnifying BCI for its replacement of the Phase I beams. *Id.* Therefore, the Court grants Transportation's Motion for Partial Summary Judgment on BCI's claim of bad faith and violation of the CPA for its refusal to indemnify BCI for its costs for replacing Phase I beams with 128 stainless steel beams. An insurer's refusal to indemnify its insured for costs the insured was not legally obligated to incur cannot be an act of bad faith or a violation of the CPA.

The Court also entered an Order dismissing BCI's claims for reimbursement of costs and expenses under the Supplementary Payments

ORDER ~ 5

Clause of the Transportation policies incurred before July 22, 2002, and after February 23, 2003, the date of the mediated settlement (Ct. Rec. 555).  However, the Court denied that motion as to expenses incurred between those two dates, leaving it for the jury to decide whether or not BCI incurred expenses within those two dates which were payable under the Supplementary Payments Clause of the policy as more fully explained in that Order.  The Court therefore grants Transportation's Motion for Partial Summary Judgment on the Bad Faith Claims and CPA claims to the extent that Transportation may not be subject to a bad faith claim based on its refusal to reimburse BCI's claimed expenses under the Supplementary Payments Clause for costs incurred prior to July 22, 2002, or after February 23, 2003.  Now the Court must address the related question of whether there is a genuine issue of material fact regarding the "reasonableness" of its decision not to pay the expenses between those two dates.

B. Did Transportation Act in Bad Faith or in Violation of the CPA?

In addition to the common law duty of good faith imposed by the courts on insurers, the Washington Legislature has imposed a statutory duty of good faith as well. *Tank v. State Farm Fire & Cas. Co.*, 105 Wash. 2d 381, 386 (1986). RCW 48.01.030, part of the CPA, states, "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honesty and equity in all insurance matters." Pursuant to legislative authority under RCW 48.30.010, the Washington Insurance Commissioner "promulgated regulations defining specific acts and practices which constitute a breach of an insurer's duty of good faith."

ORDER ~ 6

*Tank*, 105 Wash. 2d at 386; *see* WAC 284-30-300 *et seq*. A "breach of these regulations constitutes a per se unfair trade practice violation and 'insureds may bring a private action against their insurers for breach of duty of good faith under the CPA' based on such breaches." *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wash. App. 686, 697 (2001) (quoting *Tank*, 105 Wash. 2d at 386).

To prevail on a CPA claim, an insured must show (1) an unfair or deceptive act (2) in trade or commerce (3) that impacts the public interest (4) causing injury to the insured's business or property, and (5) which injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables v. Safeco Ins. Co.*, 105 Wash. 2d 778, 784-85 (1986). "The insured may establish the first element by showing a violation of any subsection of WAC 284-30-330." *Osborn*, 104 Wash. App. at 697 (citing *Hangman Ridge*, 105 Wash. 2d at 786). However, even if the insurer's conduct violates WAC 284-30-330, the insurer can not be held liable for bad faith under the CPA unless the insurer's violating conduct was unreasonable. This is because the Washington Legislature imported "the reasonableness standard into the CPA as a whole." *Osborn*, 104 Wash. App. at 699-700. The court's decision in *Osborn* is based on the language of RCW 19.86.920, which is part of the CPA, and states, "It is, however, the intent of the legislature that *this act shall **not** be construed to prohibit acts or practices **which are reasonable*** in relation to the development and preservation of business or which are not injurious to the public interest . . . ." 104 Wash. App. at 699 (bold face added).

Thus, in order for BCI to avoid dismissal of the remaining claims or such portions that remain after the dismissals earlier referenced,

ORDER ~ 7

it must meet its *Celotex* burden by producing evidence and reasonable inferences therefrom creating a genuine issue of material fact that Transportation violated a subsection of WAC 284-30-330 and that its violation was unreasonable.

*1. Reimbursement under the Supplementary Payments Clause*

For the same reasons that the Court denied summary judgment on BCI's claim for reimbursement of costs between July 22, 2002, and February 23, 2003 (Ct. Rec. 555), the Court finds a genuine issue of material fact as to whether Transportation acted reasonably and in good faith in denying BCI reimbursement for it costs during that period. Specifically, the Court found a genuine issue of material fact exists regarding whether the Supplementary Payments Clause of the insurance policies at issue required Transportation to reimburse BCI for reasonable expenses incurred at the request of BMS, the law firm hired by Transportation to defend BCI. *Id.* At trial, BCI will have the burden of establishing its right to those costs under the Supplementary Payments Clause. With respect to BCI's bad faith claim, BCI will have the burden of demonstrating that Transportation's failure to reimburse BCI for those expenses was a decision made in bad faith.

*2. Transportation's Reservation of Rights in Defending the Construction Defects Claim*

Defending a case for an insured under a reservation of rights has been recognized as valuable by the Washington Supreme Court in *Tank* where the Washington Supreme Court stated it did "not propose to discourage reservation of rights defenses" and that it "recognized [] such a defense

ORDER ~ 8

usually provides a valuable service to the insured." 105 Wash. 2d at 390. When an insurer does defend a case under a reservation of rights,

> the potential conflicts of interest between insurer and insured inherent in this type of defense mandate an even higher standard: an insurance company must fulfill an *enhanced obligation* to its insured as part of its duty of good faith. Failure to satisfy this *enhanced obligation* may result in liability of the company, or retained defense counsel, or both.

*Id.* at 388.

Transportation defended only the construction defects claim under a reservation of rights. As the Court understands this claim, it is essentially the claim for the costs of replacement of the Phase I beams. With the Court's dismissal of BCI's claim for indemnification for the replacement costs of the Phase I beams (Ct. Rec. 557), it appears that the claim for bad faith and violation of the CPA for Transportation's reservation of rights regarding that same construction defect claim must also be dismissed. On the record before the Court, Transportation acted reasonably in defending this claim under a reservation of rights; BCI ultimately could not prove that it was legally obligated to pay for the replacement of the Phase I beams with stainless steel beams.

Accordingly, **IT IS HEREBY ORDERED:** Transportation Insurance Company's Motion for Partial Summary Judgment to Dismiss Claims for Bad Faith and Washington Consumer Protection Act Liability Related to Coverage Positions **(Ct. Rec. 169)** is **GRANTED IN PART** (with respect to BCI's claims regarding Transportation's decision to defend subject to a reservation of rights, Transportation's refusal to indemnify BCI for costs necessary to replace all 128 Phase I beams, and Transportation's refusal to reimburse BCI for defense-related costs under the Supplementary Payments Clause prior to July 22, 2002, and after February

ORDER ~ 9

23, 2003) and **DENIED IN PART** (with respect to Transportation's refusal to reimburse BCI for defense-related costs under the Supplementary Payments Clause for the period between July 22, 2002, and February 23, 2003).

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and provide a copy to counsel.

**DATED** this <u>4th</u> day of April 2007.


                              s/Edward F. Shea
                              EDWARD F. SHEA
                              United States District Judge


Q:\Civil\2003\0324.MSJ.tic.badfaith.wpd

ORDER ~ 10